1

2

3

4 UNITED STATES DISTRICT COURT

5 NORTHERN DISTRICT OF CALIFORNIA

6 SAN FRANCISCO DIVISION

7

8 JUSTIN WATSON,                              Case No. 24-cv-02142-JST   (PHK)

9           Plaintiff,                        **ORDER RESOLVING DISCOVERY DISPUTES**

10     v.                                     Re: Dkts. 28, 31

11 NATIONAL GYPSUM COMPANY, et al.,

12           Defendants.

13                           **INTRODUCTION**

14          This case arises out of Plaintiff Justin Watson's ("Watson") disputes with his former

15 employers, National Gypsum Company, National Gypsum Services Company, and Gold Bond

16 Building Products LLC ("Defendants"). Plaintiff was employed by Defendants as a maintenance

17 mechanic apprentice for more than 4 years, until his termination on or about March 4, 2022. [Dkt.

18 1-1 at ¶ 7].  Plaintiff asserts causes of action under Labor Code § 6310 (protecting employees from

19 retaliation for reporting unsafe working conditions) and for wrongful termination in violation of

20 public policy.  [Dkt. 1].

21          Fact discovery in this case closed on August 15, 2025.  [Dkt. 27].  Now before the Court are

22 several discovery disputes, first raised with the Court in a letter brief dated August 27, 2025.  [Dkt.

23 28].  After the undersigned directed the Parties to meet and confer pursuant to the undersigned's

24 Standing Discovery Order, [Dkt. 30], the Parties further discussed the issues in a Joint Statement.

25 [Dkt. 31].  After carefully reviewing the papers and the Parties' submissions, the Court finds these

26 matters appropriate for adjudication without the need for oral argument.  *See* Civil L.R. 7-1(b).

27                        **SUMMARY OF LEGAL STANDARDS**

28          The relevant legal standards for discovery are well-known. Rule 26(b)(1) delineates the

United States District Court
Northern District of California

United States District Court
Northern District of California

scope of discovery in federal civil actions and provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Information need not be admissible to be discoverable. *Id.* Relevancy for purposes of discovery is broadly defined to encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350-51 (1978)); *see also In re Facebook, Inc. Consumer Privacy User Profile Litig.*, No. 18-MD-2843 VC (JSC), 2021 WL 10282215, at *4 (N.D. Cal. Sept. 29, 2021) ("Courts generally recognize that relevancy for purposes of discovery is broader than relevancy for purposes of trial.") (alteration omitted).

While the scope of relevance is broad, discovery is not unlimited. *ATS Prods., Inc. v. Champion Fiberglass, Inc.*, 309 F.R.D. 527, 531 (N.D. Cal. 2015) ("Relevancy, for the purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries."). Information, even if relevant, must be "proportional to the needs of the case" to fall within the scope of permissible discovery. Fed. R. Civ. P. 26(b)(1). The 2015 amendments to Rule 26(b)(1) emphasize the need to impose reasonable limits on discovery through increased reliance on the commonsense concept of proportionality: "The objective is to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry. The [proportionality requirement] is intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse." Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment. In evaluating the proportionality of a discovery request, the Court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

The party seeking discovery bears the burden of establishing that its request satisfies the relevancy requirements under Rule 26(b)(1). *La. Pac. Corp. v. Money Mkt. 1 Inst. Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012). The resisting party, in turn, has the burden to show that the

discovery should not be allowed. *Id.* The resisting party must specifically explain the reasons why the request at issue is objectionable and may not rely on boilerplate, conclusory, or speculative arguments. *Id.*; *see also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) ("Under the liberal discovery principles of the Federal Rules defendants were required to carry a heavy burden of showing why discovery was denied.").

With regard to proportionality, "[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment. "A party claiming undue burden or expense ordinarily has far better information—perhaps the only information—with respect to that part of the determination. A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them. The court's responsibility, using all the information provided by the parties, is to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery." *Id.*

As part of its inherent discretion and authority, the Court has broad discretion in determining relevancy for discovery purposes. *Survivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (*citing Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)). Similarly, a district court's determination as to proportionality of discovery is within the district court's discretion. *See Jones v. Riot Hospitality Grp. LLC*, 95 F.4th 730, 737-38 (9th Cir. 2024) (finding district court did not abuse discretion on proportionality ruling). Ultimately, "the timing, sequencing and proportionality of discovery is left to the discretion of the Court." *Toro v. Centene Corp.*, No. 19-cv-05163 LHK (NC), 2020 WL 6108643, at *1 (N.D. Cal. Oct. 14, 2020).

Ultimately, the Court has broad discretion and authority to manage discovery. *U.S. Fidelity & Guar. Co. v. Lee Inv. LLC*, 641 F.3d 1126, 1136 n.10 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and their rulings will not be overturned in the absence of a clear abuse of discretion."); *Laub v. U.S. Dep't of Int.*, 342 F.3d 1080, 1093 (9th Cir. 2003). The Court's discretion extends to crafting discovery orders that may expand, limit, or differ from the relief requested. *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (holding trial courts have "broad

1   discretion to tailor discovery narrowly and to dictate the sequence of discovery"). For example, the

2   Court may limit the scope of any discovery method if it determines that "the discovery sought is

3   unreasonably cumulative or duplicative, or can be obtained from some other source that is more

4   convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

5                                          **DISCUSSION**

6   **I.      30(b)(6) Deposition of Gold Bond Products LLC**

7           The Parties' first dispute is in connection with the Rule 30(b)(6) deposition of Defendant

8   Gold Bond Products (as an aside:  apparently because this case was removed from California

9   Superior Court, the Parties' joint briefing repeatedly mistakenly refers to this as a "PMK" (person

10  most knowledgeable) deposition of Gold Bond – as experienced federal practitioners know, unlike

11  under California state court discovery procedure, there is no requirement in Rule 30(b)(6) for a

12  corporate designee to be the "person most knowledgeable" on a topic. *See Cannavan v. Cnty. of*

13  *Ventura*, 2021 WL 4945186, at *5 (C.D. Cal. July 16, 2021) ("The standards applying to 30(b)(6)

14  witnesses under federal law and to 'PMK' witnesses under California state law overlap in part but

15  are not interchangeable.").

16          As noted above, after all discovery matters (including the original Joint Discovery Letter of

17  August 15) were referred to the undersigned, the Court ordered the Parties to meet and confer

18  pursuant to the undersigned's Standing Discovery Order.  In a Joint Statement, the Parties reported

19  that they met and conferred on September 15, 2025, to discuss the outstanding discovery disputes.

20  [Dkt. 31 at 2].  Specifically, the Parties reported in their Joint Statement that (while being unable to

21  resolve all discovery disputes) "the Parties were able to resolve some issues related to the 30(b)(6)

22  witness."  *Id.*  The Parties provided no further explanation of the issues resolved as to this 30(b)(6)

23  deposition, and it appears based on the Joint Statement that no issues relating to that 30(b)(6)

24  deposition remained to be resolved.

25          Accordingly, based on the record presented, it appears that this particular dispute is, in fact,

26  moot because it was resolved by the meet and confer.  Accordingly, the motion relating to the

27  30(b)(6) deposition of Gold Bond Products is **DENIED WITHOUT PREJUDICE** as **MOOT**.

28  //

United States District Court
Northern District of California

## II.     Subpoena for Medical Records

While the Parties' briefing refers to "subpoenas," based on the substantive briefing it appears that Plaintiff raises a dispute regarding a single subpoena for medical records which Defendant served on Kaiser.  According to Plaintiff, "the parties agreed that as to the medical records, there should be a first look procedure, wherein plaintiff's counsel received the records first [and] was provided the opportunity to review and redact any records as necessary[.]" [Dkt. 28 at 2].  According to Plaintiff, "[n]o subpoenaed records have ever been provided to plaintiff's counsel for review." *Id.*   Therefore, Plaintiff argues, "[t]he subpoenaed records should be immediately provided to plaintiff's counsel for first look as agreed, or a clear explanation provided as to the unavailability of the records." *Id.* If Defendant fails to provide either the records or an explanation, "plaintiff requests permission to subpoena these records himself[.]" *Id.*

Defendant responds that this dispute is premature.  *Id.*  Defendant avers that "Defense Counsel has asked the subpoena service via email (with Plaintiff's counsel copied on the email) to produce the subpoenaed documents to Plaintiff's counsel when ready pursuant to the Parties' first-look agreement." *Id.*  There is no dispute therefore that the documents would be produced pursuant to the first-look agreement.

Based on this representation, it appears that, while the subpoena was issued, the documents may or may not yet have been produced by Kaiser.  Clearly, the Parties are in agreement that, if and when the medical records are produced, the documents would be sent to Plaintiff's counsel pursuant to the "first-look agreement" already in place between the Parties.

Accordingly, the Court **ORDERS** the Parties to file a Status Report by December 3, 2025, reporting on whether the subpoenaed records have been produced to Plaintiff's counsel pursuant to the first-look agreement or if there is an agreed-upon date or plan for completing such production pursuant to the first-look agreement.  Based on the representation that neither Party disputes that any production from Kaiser will follow the first-look agreement, in any event, the Court **DENIES** this motion with regard to the subpoena for medical records as **MOOT**.

If on December 3 the Parties report that Kaiser has not yet produced the records in response to the subpoena, the Court **ORDERS** Defendants' counsel (by December 5, 2025)  (a) to serve a

1    copy of this Order on counsel for Kaiser, (b) to file a Notice on the docket providing the Court with

2    the name and contact information of counsel for Kaiser and instruct such counsel to enter appearance

3    so that the Court may directly communicate with all involved counsel, and (c) to file a one-page

4    Statement explaining whether the subpoena has been withdrawn or if there is an agreement in place

5    to conclude the production from Kaiser (and if so, reporting on that plan's status).

6    **III.    Other Fact Discovery Issues**

7            In the Joint Discovery Letter, Plaintiff finally raises four discrete discovery issues (labeled

8    as "other fact discovery issues") seeking various additional discovery and information.  Plaintiff

9    avers that Plaintiff raised some discovery issues (regarding interrogatories and requests for

10   production) in a meet and confer letter dated June 1, 2025; then received a response from Defendants

11   on July 10, 2025; and thereafter Plaintiff was apparently unable to raise these four issues until the

12   Discovery Letter Brief itself dated August 27, 2025 due to various alleged scheduling conflicts (such

13   as an arbitration, Defendants' counsel's vacation, and the taking of depositions). *Id.* at 4.

14           Defendants argue that it is far too late, after the close of fact discovery, to raise new discovery

15   issues and requests for additional information, particularly where Defendants made clear their

16   positions on these issues in their July 10 letter. *Id.* at 4-5. Defendant specifically disputes that

17   Defendants' counsel's vacation caused any delay, because that vacation took place in early June

18   2025 (along with two days taken in early August), none of which prohibited Plaintiff from meeting

19   and conferring after receiving the July 10 response letter – and none of which prevented Plaintiff

20   from filing a motion to compel prior to the close of fact discovery. *Id.* at 5. Defendants point out

21   that Plaintiff never responded to the July 10 response letter, never scheduled a meet and confer after

22   that date, and only raised these four issues now in this Discovery Letter Brief.  *Id.* Defendants argue

23   that Plaintiff's motion as to these four issues should be denied because Plaintiff waited far too long

24   and failed to diligently raise these disputes until after the discovery cutoff date.

25           Plaintiff seeks four new categories of discovery: (1) contact information for former

26   employee of Gold Bond and witness Carla Pham (which the Parties' briefing sometimes appears to

27   misspell as "Pharn"), whose contact information was sought by interrogatory; (2) documents

28   pertaining to scheduling, particularly the weekend work schedule for all other mechanics as well as

United States District Court
Northern District of California

1    Plaintiff; (3) information pertaining to all safety complaints which Plaintiff allegedly raised with

2    Gold Bond; and (4) information and documents pertaining to the accrual of the specific points relied

3    on to terminate Plaintiff, including points accrued toward his termination due to work time lost

4    because of COVID and points accrued for clocking-in late due to an alleged obstruction of the front

5    entrance of the facility.  *Id.* at 2-4.

6            Defendants raise no substantive dispute as to the relevance (for purposes of discovery) with

7    regard to these four new areas of discovery.  Defendants argue that the late-raising of these disputes

8    is sufficient cause to deny Plaintiff's requests, particularly where Defendants made clear their

9    positions on these disputes as early as July 10 (over one month prior to the fact discovery cutoff).

10           The crux of this dispute, then, is whether the discovery relief sought is proportional to the

11   needs of the case.  There is no dispute that Plaintiff was aware of Defendants' views on these

12   discovery issues in July 2025, and there is no dispute that Plaintiff had weeks (over one month) to

13   file a motion to compel before the fact discovery cutoff.  From the briefing, it appears that Plaintiff

14   was able to depose several Gold Bond employees on at least topics 2 and 3 summarized above

15   (scheduling and safety complaints).  *Id.* at 3.  With regard to topic 2 above (scheduling), Plaintiff

16   admits that requests for production of documents related to scheduling were propounded, objected

17   to, and never pursued by Plaintiff by a motion to compel during fact discovery. *Id.*

18           With regard to Plaintiff's motion to compel production of documents (as summarized in

19   topics 2-4 above), the Court finds that the requests are not proportional to the needs of the case.

20   First, Plaintiff has failed to demonstrate diligence in pursuing these documents during the fact

21   discovery period, which undermines Plaintiff's uncorroborated argument that these documents are

22   in any way critical or "key" in resolving the issues.  If these three categories of documents

23   (summarized as topics 2-4 above) were truly as important as now claimed to the issues at stake in

24   this action, Plaintiff had over one month to pursue these documents from July 10, 2025, until the

25   fact discovery cutoff date in August.  Plaintiff's argument that there were scheduling conflicts which

26   barred Plaintiff's counsel from raising these issues is unconvincing, because no dates were provided

27   for the arbitration which allegedly cause delay and because Defendants' counsel has amply

28   explained why *that* counsel's vacation could have had no impact on Plaintiff's failure to raise these

United States District Court
Northern District of California

1  issues by filing a motion to compel or seeking further meet and confers. Further, the fact that several

2  depositions were taken in the last week or so of the fact discovery period does nothing to explain

3  Plaintiff's failure to raise these requests for documents throughout July or early August, prior to

4  those depositions.

5        Second, as noted, Plaintiff was apparently able to depose several employees of Defendants

6  on these topics and, while Plaintiff apparently is not satisfied with that testimony, that alone does

7  not demonstrate proportionality of the discovery. It is well-understood that document requests (such

8  as those sought here) for "all" documents on a particular topic inherently entail burdens and Plaintiff

9  has failed to show why the need for these documents outweighs the burdens of searching,

10  processing, and producing them. The fact that Plaintiff has not requested narrowly defined or strictly

11  targeted documents here undercuts proportionality as well, because Plaintiff now seeks all

12  documents on all work schedules of all mechanics, all documents on all of Plaintiffs' safety

13  complaints, and all documents on the accrual of points to terminate Plaintiff. The fact that Plaintiff

14  now seeks all these documents in an effort to try to find documents which are hoped to potentially

15  impeach the testimony obtained from Defendants' witnesses at deposition is not a sufficient basis

16  to demonstrate proportionality of the broad requests for documents. *See Schobinger v. Twitter, Inc.*,

17  2025 WL 52746, at *2 (N.D. Cal. Jan. 9, 2025) (denying further request for broad document

18  production as disproportional to the needs of the case where it had "the feel of a last-

19  ditch fishing expedition, the burden of which outweighs the likely benefit.").

20        Accordingly, because the Court finds that the requested discovery is not proportional to the

21  needs of the case, in light of the appropriate legal standards and in particular Plaintiff's unexcused

22  failure to raise these issues timely during the fact discovery period, the Court **DENIES** Plaintiff's

23  requests for additional discovery in categories 2 through 4 in Plaintiff's list of "Other Fact Discovery

24  Issues" (specifically, the requested discovery on scheduling; safety complaints; and points accrued

25  for termination).

26        As noted above, category 1 of additional discovery sought by Plaintiff is simply the contact

27  information of former Gold Bond employee Carla Pham. Plaintiff's portion of the Joint Discovery

28  Letter states that "Ms. Pham is a former employee and Defendant reasonably objected to providing

her contact information based on privacy concerns. However, Defendant is amenable to supplementing its Initial Disclosures to provide Ms. Pham's last known contact information." *Id.* at 2-3. Defendant's portion of the Joint Discovery Letter does not dispute this statement, and it appears that there is no actual dispute over providing this requested information in a Supplemental Initial Disclosure.

Unlike categories 2 to 4, this category of discovery sought does not entail much, if any, burden to provide. Serving a supplemental Initial Disclosure of one person's last known contact information is relatively straightforward, unlike searching for and collecting new categories of documents for production. Accordingly, the Court finds that this category of discovery is proportional to the needs of the case; and as noted, there is no dispute raised as to relevance here.

Accordingly, Defendant is **ORDERED** to serve a Supplemental Initial Disclosure (or Supplemental Interrogatory Response) which provides Ms. Pham's last known contact information by December 5, 2025. Because Defendant has raised alleged privacy concerns with regard to Ms. Pham's information, any such Supplemental Disclosure (or supplemental interrogatory response) **SHALL** be designated and treated by all counsel and the Parties as Confidential pursuant to the Court's Model Protective Order for Standard Litigation (and will abide by the terms of that Model Protective Order) until such time as the Protective Order in this case is finalized (after which time that finalized Protective Order shall govern the Confidential treatment of Ms. Pham's contact information).

## CONCLUSION

For all the reasons discussed herein, the Court **DENIES-IN-PART** and **GRANTS-IN-PART** the discovery motions presented by the Parties as detailed above.

This Order **RESOLVES** Dkts. 28 and 31.

**IT IS SO ORDERED.**

Dated: November 26, 2025

PETER H. KANG
United States Magistrate Judge

9